253889, Trustees Main 270 LLC v. ApplianceSmart Inc. et al. Oral argument not to exceed 15 minutes per side. Mr. Clifford for the Defendant's Appellants. Good morning. May it please the Court, Damian Clifford on behalf of Appellants ApplianceSmart Inc. and JanOne Inc. I would reserve three minutes of time for rebuttal. The trial court erred as a matter of law concluding that Trustee Main 270 reasonably rejected two replacement tenants proposed by ApplianceSmart. The undisputed facts demonstrate that both replacement tenants would have put Trustee Main 270 in as good a position as they would have been but for the breach. In such circumstances, a landlord acts unreasonably in rejecting those... Do you think that that's a fact question or a legal question? Something reasonably mitigated. The trial judge seemed to treat that as a legal conclusion but that seems to be more of a fact question in my mind, don't you think? Well, what I would say is the conclusion is a legal conclusion and Judge Moore and Judge Clay basically have already looked at this in the past. Judge Clay issued the decision back in Baptist's position and concluded that failure to mitigate damages was reviewed under a legal de novo review as a legal conclusion. And then that looked back to Kalamazoo which was decided by Judge Moore back in 2007 that talked about factual findings were reviewed under clear air versus... In common police court in Ohio, that would go to a jury, right? Determination of whether someone did or basically breached the contract or not because it's in the lease, is that what you're asking? Yeah, this reasonably mitigating damages would go to a jury in Ohio in common police court. I'm not saying that governs us but I'm just asking you. Normally, yes, your honor. So normally what would happen is there would be the same sort of circumstance in front of a jury and one of the questions would be did the plaintiff in this instance because it's in the lease mitigate their damages and the answer would be asked to the jury and the jury would make that call. Okay. And I'm not saying that that necessarily governs what would happen in federal court but it's an indicia of how this question is treated, isn't it? In the legal world? I think we have to be careful though because of the fact that all the factual issues that are being raised, you still need to reach those legal conclusions, right? That's always true, right? Like in a negligence case, somebody act reasonably. You would always give that to a jury, wouldn't you? You would but in a breach of contract action, you have to make sure the elements are satisfied and so this court's purview is to make sure that all the elements of the contract are satisfied and because it's in the contract. But like say the question is, hey, was the breach material, that would go to a jury, wouldn't it? The material of the breach? I'd have to think about that. Is the breach material? I mean I think there's parts that definitely go to factual disputes and the materiality of it isn't sufficient to meet the standards for having that call. So I suppose that if you were sending reasonableness of something to the jury, the trial judge would give instructions as to what the law requires and then it's an application of the law to the facts. That would be correct. So the underlying question is who decides and is this an eerie question or not? Underlying question, right. So you're asking me the question of under, okay, I'm trying to make sure I understand your question, Judge. So whether this is something that is governed by state law or whether something's governed by federal law. Is that your question? I just want to make sure I understand. Well, this is a diversity case, right? Correct. So under eerie, we apply substantive state law and procedural federal law. Correct. So who decides? Is that procedural or substantive? Do we need to do this? Let's assume that we are applying de novo review because that's what you want anyway, right? Correct. So under de novo, I mean the facts at issue aren't really in dispute. It's the conclusion based upon those facts is what I would say, right? So in this instance where you have, you know, this court has to look to see what the Ohio Supreme Court would do based upon presenting this question. And under the Ohio Supreme Court, under the law in Ohio, you have to put the non-breaching party in as good a position as if the contract would not have been breached. And so in looking at mitigation, the parties have to take reasonable steps and take advantage of opportunities to try and limit the amount of damages they can recover. And so in this instance, when you look at that standard and you look at the facts and you look at what was proposed, ARCA and flooring liquidators, ARCA was an entity that had $40 million in revenue going to $50 million in revenue, was an affiliate of the guarantor, had been operating for 40 years and had 18 locations. But what was requested of the landlord of the tenant was to pay the past due rent, was to have a 90-day right to terminate, was to have a six-month deposit, and also have a security interest lien on all property in the store. None of that, beyond being current on the rent, is in the former lease space on that lease. And so under those circumstances, they're trying to be put in a better position than they would have been. And you can't do that under the law. This court has looked at this, yet that's what precisely the district court said in its decision on page 21. It does not deem the proposed conditions in trying to be made whole is unwarranted in this circumstance, and therefore it's reasonable. But you can't be placed in a better position, and that's what they're asking for. And so if you look at that, you look at Flooring Liquidators. Flooring Liquidators is another location that was proposed that had 22 locations, had a publicly traded company with $280 million. Don't they get some leeway if they're dealing with the breacher? I mean, hey, the breaching party is coming back and says, oh, we want you to do this. Well, why should I trust you? You're the breaching party. I mean, okay, show me some good faith. Give me some other guarantees or give me some past due rent or give me – show me some good faith and we can do this. Fair, Your Honor. So I would say you can have some skepticism, but in this instance, they are paying the past due rent. They are adding another guarantor to it. And the issue you're raising here is they want more. They want more than what they can get on a lease. And you can't do that under Ohio law. And the sole reason they're doing this, and I'm glad you raised this, is because they wanted the space to be vacant for AutoZone. AutoZone is what they were doing. They were gambling in hopes that AutoZone was going to be a much better tenant than these regional tenants. And AutoZone ultimately ends up signing a lease that provides a minimum of 15 years all the way up to 40 years. And under AutoZone, having them there, that would allow them to charge more rent. The rent at the time which the 2025 rent was due was $18,000. AutoZone's first 10 years is $22,000. So you have a $4,000 increase and you have that extended time. But think about this, right? So ApplianceSmart, at the time that it is in breach, has no assets, no revenue. But they admit, the landlord admits, that Jan 1, which is the guarantor on the original lease, is extremely collectible. They admit that having a tenant in that space will potentially impact AutoZone's willingness to lease the space. And if you look at LiveVentures, which they say is this concern about, well, there's an SEC investigation. Well, interestingly, in December of 2021, so three months before this lease is breached, they accept $213,807 from LiveVentures in that third extension. And LiveVentures actually pays that January 22 rent. So this notion that we have this concern that these are these bad actors, we don't have to deal with them again. It's just not true. They admit in December of 21, the guarantor is extremely collectible. And they accept over $200,000 from LiveVentures in December of 21 too. And in fact, LiveVentures actually pays the rent for January 22. And so under some circumstances, I agree with you that they can be skeptical. But under these circumstances where they admit that LiveVentures has money, they accept $200,000. They admit that Jan 1 is extremely collectible. They admit that if we have someone in this space, it could jeopardize AutoZone leasing that space. They're gambling. And frankly, they shouldn't be able to gamble with our clients' money simply because they want AutoZone. And so those are the conclusions I would raise. I mean, I'll sit down and reserve this. Go ahead. What is the point about it making it less advantageous for AutoZone? Sure. I mean, in other words, the lease presumably would have run out. And then if they said, okay, we want to go with AutoZone, why wouldn't they have been free to do that? What would have been disadvantageous? I'm sorry. Just say again, Your Honor. I'm sorry. I'm just trying to follow your question. I'm sorry. Yeah, I'm just trying to follow the argument about why it would have been disadvantageous for them to have the tenant if they wanted AutoZone. I got it. So AutoZone signs a letter of intent on July 11, 2022. They don't sign a lease until September of 2024. During that period of time, that space is vacant. So AutoZone has the ability to go into that space, look around, look at the store, come up with the ideas, come up with plans to be able to create their build out of their space to use it. And they admit, again, at the trial court level that they're better off waiting for a tenant like AutoZone than a regional tenant. And having that tenant in there, this is from the landlord. This is on page 88 on EFCF 92 and also on page 30. Those are in the district court's testimony where the landlord testifies that this is a more valuable tenant and having someone in that space would potentially jeopardize AutoZone coming to it. And so I hear your point of why is that better. They've admitted that this is the reason, right? And so I think it is that access. I'm not understanding. Okay, fine. We have a party who's breached three times. And they say, hey, it would be great for us to have a nationally known name that's stable, right? AutoZone, everybody knows it. Everybody's got a car. Okay, that'd be a great tenant. We've got to wait for a year or whatever. I mean, why is that not reasonable in the face of what they were dealing with before? I mean, I understand you. Okay, they have some duty, but they don't have to take anybody off the street and put them in that space, nor do they have to deal with the person who is the breacher if they don't really want to. So, I mean, it seems like your client put yourself in the position by not paying the rent. But the offer of the replacement tenant, Your Honor, would put them in a better position than not paying the rent, right? So Appliance Smart at the time of the breach has no assets, has no money. And so they're not paying anything. And they're offering to pay that past year rent to be made whole. And they're also offering another guarantor. And they admit that these entities can pay the debts. I'm over my time, Your Honor. I do have a question that I didn't want to interrupt, but this is a diversity case. And I'm concerned that the complaint and answer don't actually establish diversity jurisdiction. So my understanding, you're Appliance Smart, right? Yes. That the statements were that it was a Minnesota corporation. But I don't know that you established where you were actually incorporated, which could be multiple states, or where your principal place of business is. And similarly, another defendant, as I understand it, is Janone, which the information that I have that was in the pleadings was just that it was a Nevada corporation. But again, I don't know that you established or the other side established principal place of business or that that was the only state of incorporation. Can you point me to something in the record that establishes diversity jurisdiction? Or is this something that you would and the other side in your estimation would need to clarify for the panel? I think we'd have to clarify. Honestly, Your Honor, I am not familiar and did not look at that issue as no one has raised it until now. But we have an obligation to ensure that there is jurisdiction. So if I had missed where you established that, and I'll obviously ask your opponent that question. Yes, I would say they're the one that filed the lawsuit in this district. So I would perhaps say it's better suited for them versus me. Thank you. Thank you, Your Honor.  Good morning. May it please the court. My name is Ed Hubbard, and I am the attorney for AFLI, Trustees Maine 270 LLC. This morning, what I'd like to briefly do is in the first part of my presentation, explain why the facts regarding the various tenants aren't especially important to this court's consideration, and then briefly touch on those facts to address any questions that the court may have. Are you going to address the jurisdictional issue that Judge Moore just raised? Your Honor, I, too, am going to need to fall back and review the pleadings and present that to the court because that was not part of my preparation for this morning. Sure, and vis-a-vis you, your client is an LLC, correct? That's correct, Your Honor. So you would need to give us the citizenship of the members of the LLC as well, not just of the LLC itself but of the members of the LLC. But it's fine for you all to give us letter briefs establishing the facts that would give us diversity of jurisdiction, and prepare those within two weeks, not to exceed ten pages, that would be great. Sorry to raise this, but it did seem to be important for us to make sure that there is diversity of citizenship. Understood, your Honor. Thank you. In preparing for this case, the conclusion I reached was that the appeal here is to the result and not the process. And what I mean by that is that the only issue appealed is the trial court's determination of a matter of law. Yet the appellant does not cite its own proposed findings of fact or propositions of law to the court in its appellate brief. And it cites only two citations to the trial court's opinion. The appellant has some burden in challenging a conclusion of law to demonstrate that the trial court's legal reasoning was incorrect, that it applied the wrong standard, misread a controlling precedent, or drew a legally impermissible conclusion from the established facts. There's no such claim in the appellate brief. Essentially, they are claiming that the conclusion of law was erroneously reached because of the result reached. And what they are actually doing is attempting to conduct a backdoor appeal of the court's finding of the fact. I think it's important to note that the trial court's opinion and order, in all of its discussions, follows a very fixed format. And at page 815 at the opinion and order, the trial court found facts that the evidence presented at trial demonstrates a consistent effort to engage with potential tenants, negotiate lease terms, and secure a replacement tenant from 2022 until 2024. That is not appealed here. The trial court then makes a conclusion of law that, taken together, these ongoing efforts demonstrate that the plaintiff met its duty to mitigate damages through... Why was it reasonable to reject a proposed tenant who, let's say they didn't want to pay the rent in arrears, why was that something that was a reasonable requirement? Because if you went out and got, if somebody else had just walked in the door and said, hey, this space is great, can I have it for the next year, and I'll pay you the rent that you were getting, and you said, oh, I want the past rent, too, and they said, well, that's not my problem, that was somebody else, I mean, that would have been unreasonable for you to reject that tenant, right, in mitigation? So the difference is just that it was the guarantor that brought you the tenant? I mean, that's why you didn't want either of the ones that they brought in? Your Honor, as a factual matter, the presentation made to put in the replacement tenant, ARCA, was premised on their offer to pay the outstanding rent. So this was not a demand that we said, no, you can't come back in until you pay the last, the outstanding rent. And that obligation was fixed. As a matter of law, we were owed that money either by the guarantor or by the tenant in default. Yeah, right. I agree. The question is, what do you have to do to limit your damages? I mean, at some point, if somebody brings you a tenant for an empty space, don't you have to say, oh, yeah, this is great, I'm going to limit my damages. It's not, otherwise it's just moral hazard, you can do whatever you want, right? That's true. And the evidence was very clear that we did that. We did that before the ARCA presentation. We did that after the ARCA presentation. Filling a large, big box store with a tenant, each of which has its own design parameters, its own operations, its own color schemes, its own permitting, for example, if you are recycling oil, is a long-term and industrious process. And oftentimes, as the testimony at court made clear, tenants will flip back and forth between different centers trying to get the most advantageous center. And they'll send multiple letters of interest or letters of intent to the center. And I want to be very clear that the testimony was that AutoZone came in two waves. One was the initial wave. There were some initial discussions. And then they essentially left the scene. And it was almost two years later when somebody from AutoZone came back to the premise. Somebody at the premise called A.J. Solomon, the broker, said AutoZone is here, and they're relooking at the letter of intent. So AutoZone was not in the background in ongoing negotiations. There was Northern Tool. There was Sheetz. And Sheetz is another good example. A gas station requires permitting, requires environmental studies. Right, but that would have been a reason that you could have said, okay, we don't want Sheetz. And I understand, of everybody that you've named, it seems to me that AutoZone is probably the premier tenant of those, and you would have loved to have them in. But again, what's the problem with the two proposals that they brought to you? I mean, as long as somebody is paying you rent, why is that not mitigating your damages? In brief, Your Honor, with ARCA, ARCA made a presentation. We put a presentation and submitted it to them indicating that we would like various protections given the overlap, given that they were going to be operating essentially the same business, an appliance recycling business that had failed three times, that we'd like various protections. And the court found, and the testimony is unrebutted, that at no time did they ever come back and say, those requirements are too much for us. That's too rich. That's unfair. But we'll do Y instead. That never happened. They terminated the discussions after we made a counterproposal. With respect to Flooring Liquidators, Flooring Liquidators was unknown to the landlord because it's a West Coast-based company. There are reasons to be concerned about a California-based company opening up in Ohio. Nobody in Ohio has heard of it. Nobody in Ohio knows what they sell other than flooring. Nobody has any experience. They don't have an established customer base. We don't know what their stores look like. We don't know if they're going to put a lot of money into this. We don't know if they're going to have a distribution center. And all those questions were put to the appellants multiple times. And the record is clear, and the trial court found, that they never responded to those questions, that those questions were commercially reasonable, and that, in fact, the representative of the appellant also agreed that some of those items would be important to know. And they refused to provide that information. That was a prerequisite for a meeting to discuss their lease. So essentially your position is that they came forward, or two people came forward, these ARCA and flooring, and you responded with requests for more information and that they did not respond with the information that you needed. Is that right? Yes. And the court's opinion, and I'm sorry I can't cite this, but I can tell you as the attorney writing, and it isn't within the judge's opinion. This is not going outside of the record. We were the party sending frequent follow-ups as to what is the status of your response, when can we have this information. We will have a telephone conference, but we need this information first. There's a long record of showing our attempts to engage in meaningful discussions after they essentially refused to participate in good faith. The facts in this case show an immediate and continuous mitigation of efforts after the third default here. The issues regarding ARCA and flooring liquidators are fact disputes. Those fact disputes were resolved by the court and those particular factual findings are not under appeal here. AutoZone was a potential tenant early in the process and they later returned and ultimately did become a tenant. Accepting, well, I should say based on the court's findings of fact, the appellant here has failed to offer any cognizable argument that the court cared in reaching legal conclusions because all the court's legal conclusions flowed naturally from its findings of fact. Could this case have gone to a jury just that neither one of you asked for it? There was a prohibition in the lease against a jury just for the court's background. And this was in a removal case, right? You filed it in federal court? Correct. Okay. Unless the panel has any other questions, I'm ready to conclude my presentation. Thank you. I'm going to address this notion that we somehow are barred from contesting the conclusions reached, whether it's a jury doing it or a bench. And the notion is that courts of appeals all the time look at issues and basically determine, is this enough under the law? And that's what we're really asking. Does this satisfy, in this instance, the plaintiff's obligation to mitigate its damages under the lease? And the conclusion is they didn't satisfy it. They didn't meet it. And if they don't meet it under the law... But if the judge says, oh, you know, you didn't fill out the questionnaires, right? I mean, the judge basically says for the flooring liquidators, you didn't provide the information they wanted. That's a finding of fact, isn't it? Even if that's not the ultimate conclusion of law, the finding of fact is, hey, there was information. How do you not then at that point say, well, how is it not reasonable for them to reject that tenant if they didn't get the information that they asked for? The information they asked is, again, information beyond what's in the lease, right? And so the question or response to that, Your Honor, would be the fact that they're asking for more than they're entitled in the lease. And they're not entitled to be made whole. They're entitled just to be in the same position they would have been after the breach. But they're entitled to ask you about your business, right? How do you plan to make this... This is a three-time loser. What are we doing different now? What are you bringing to us? This is a West Coast company. They have no name recognition here. How are you going to make... I mean, it's in their interest as the landlord to have a thriving shopping center, not to put another window belly up, right? Questions are allowed to be asked. That's fine. But if we look back at ARCA, they're not just asking questions, right? They want the past year rent paid. They want a six-month deposit. They want a right to terminate in 90 days. And they keep the six-month deposit as liquidated damages. And they want a lien over all property in the building. None of those beyond being made current are in the lease. And so they're asking to be made better than they would be but for the breach. And that's the problem. Was ARCA related, though, to ApplianceSmart? Yes. So the requirements were because of their having been burned by ApplianceSmart the first time around. I think that's a fair conclusion. But the issue, though, is they're asking for more than they would have got under the lease, right? So that's the problem. But if they're doing it because they lost money on the situation with your client, ApplianceSmart, then it's perhaps an unfair requirement that they have to do exactly the same thing with some related entity. But it's not doing the same thing because they're volunteering to pay that past year rent. They're getting them current. They're getting them in the space to do it. And again, it's on Appendix 1492. It's from Marlene Brisk to Mark Unger and A.J. Solomon. I filed suit a few months ago against the guarantor who's extremely collectible. That's December 13, 2021. And then we have also, this is on page 88 of the testimony, from the landlord's perspective, it's better off waiting for a tenant like AutoZone rather than ARCA Recycling because of those very risks you just identified. Yes. At this point in time, in fact, if you had entered in a new lease with ARCA Recycling, there was potential AutoZone would just go away. Yes. So the point is, this is a ruse. This isn't something where they're really concerned about it. They admit that the guarantor is extremely collectible. So let's just say AutoZone wasn't around or anything. Where would they be? They would sue the guarantor and they would sue the tenant for breach of the lease. They'd owe the packed new rent, the current rent, attorney fees against both of them. But in this instance, if they would have taken ARCA or they would have taken flooring liquidators, they would have minimized their damages. The first partial of the partial motion for summary judgment, the $155,000 that was awarded, would have already been paid. They would have been paid some amount of money, even if they ran away. They would have paid some amount of money. They would have paid the past due rent. They would have paid some portion of current rent until they allegedly breached again. And in that instance, their rent, the damages at issue here, would be less. And that's what Ohio law requires, is they have to take affirmative steps and opportunities to minimize their damages. And I'll just leave with one point. I've got 12 seconds here and I'll do my best. One of the district courts said cash coming in is always worth more than a judgment on the court's roles. And I think that's from Westfield. And I think that's a good analysis here of this is just a pretext. They wanted AutoZone in. And with that, we'd ask for the district court's decision to be reversed and vacated and, Your Honor, of course, we will work together to address the diversity issue. Thank you very much.